Filed 8/18/25  P. v. Brown CA2/6
Opinion following transfer from Supreme Court
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH IRBY BROWN,<br><br>  Defendant and Appellant. | 2d Crim. No. B321228<br>(Super. Ct. No. 1442714)<br>(Santa Barbara County)<br><br>OPINION ON TRANSFER<br>FROM THE SUPREME<br>COURT |

Joseph Irby Brown appeals from the judgment following resentencing.  On remand from the previous appeal, the trial court sentenced Brown to 25 years to life in state prison for second degree robbery with two prior strikes (count 1; Pen. Code,[1] §§ 211, 667, subd. (e)(2)(A)(ii)), plus a determinate term of 16 years for resisting an officer by threats or violence (count 3; § 69, doubled pursuant to § 667, subd. (e)(2)(C)), and two prior serious felony convictions (§ 667, subd. (a)(1)).

---

[1] All undesignated statutory references are to the Penal Code.

Brown contends the trial court erred when it found him ineligible for mental health diversion, imposed the high term for count 3 without a jury determination of aggravating factors, failed to consider the presumption of low term based on trauma, did not dismiss five-year enhancements for prior serious felony convictions, and did not reconsider his *Romero* motion to dismiss prior strikes (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*)).  He also contends errors in the abstracts of judgment must be corrected.  Following transfer from the Supreme Court, we reverse the sentence for count 3 and remand for full resentencing.  In all other respects, the judgment is affirmed.

FACTUAL AND PROCEDURAL HISTORY[2]

*Gas station robbery*

Brown was convicted following a jury trial of second degree robbery of a gas station (count 2, § 211) and a misdemeanor count of wearing a mask or disguise to avoid detection (count 4, § 185).  The jury found true an enhancement for use of a deadly weapon (§ 12022, subd. (b)(1)).  In the first appeal in this case, we reversed both counts based on an involuntary confession.  (*People v. Brown* (Nov. 3, 2020, B291733) opn. on rehg. [nonpub. opn.] 2020 WL 6439959.)  On remand, the district attorney opted to not retry these counts, and the court dismissed them on the People's motion.

*Bank robbery*

In December 2013 Brown entered a Rabobank in Santa Barbara wearing a baseball cap, a grey sweatshirt with the hood over his head, sunglasses, and black gloves.  Teller G.D. was

---

[2] The factual summary is derived from our opinion and the record in the first appeal.  We take judicial notice of that opinion.

2

immediately suspicious because it was not a cold day and the clothing was unusual.

Brown took a deposit slip and wrote on it, "Give me the money[.] No one gets hurt[.] Act stupid you die." He went to the teller window and set down the note. G.D. put about $4,000 in currency on the counter. Brown asked if there was a dye pack, and G.D. assured him there was not. G.D. was unable to take the note because Brown had his finger on it. He put the money under his sweatshirt and walked out of the bank.

Officer Richard Washington detained Brown a few blocks from the bank. Brown had changed his clothes and was holding a bag containing a hoodie and hat that closely resembled those worn by the robber in a photograph transmitted by the bank. When Washington radioed for backup, Brown stood up and ran. Washington caught Brown and tackled him. Brown got up and continued running. Washington tackled him a second time. Brown got up again, grabbed the officer's motorcycle helmet, and wrenched his head back and to the right. Washington subdued Brown with the help of a citizen.

Washington suffered lacerations to his face and elbow and abrasions to his hand. His uniform was ripped and his helmet was broken.

The jury convicted Brown of second degree robbery of a bank (count 1, § 211) and forcibly resisting the police officer who detained him for that robbery (count 3, § 69). He admitted he suffered two prior serious felony convictions (§ 667, subd. (a)(1)) and two prior strikes (§ 667, subds. (d)(1), (e)).

*Defendant's trial testimony*

Brown testified he was ambushed by two men in November 2012. Hospital records showed he suffered serious permanent

injuries consistent with being shot twice with an assault rifle and stabbed twice with a machete.  Brown testified that after leaving the hospital, he suffered from physical pain, weakness, nerve damage, recurring fear he was being attacked, and memory problems.  He "tried to never sleep" because he would have nightmares and flashbacks of his attack.

Brown testified he often wore hats and hoodies to hide from people trying to kill him.  He sometimes wore gloves because of nerve damage to his hands.

On the day of the bank robbery, Brown had $30 in his pocket to buy prescription medication.  His practice was to sell the prescription medication and use the money to buy street drugs.  He believed he began experiencing a blackout between 3:30 and 6:30 a.m.  He stood in front of the drug store, then went into Rabobank across the street.  He wrote the note, gave it to the teller, and robbed the bank.  He said he had an out-of-body experience in the bank and came "back into [himself]" when he exited.

While running from the bank, he saw a woman he knew.  He went to her home, changed clothing, transferred the $30 to the new clothing, and put the clothing from the robbery into a bag.  He called a taxi and went outside to meet it.

Brown testified that when he heard Officer Washington call for backup, he decided to run and "try to be free as long as I could."  He pushed the officer's face to try to get away.

*Trial evidence of mental state*

Brown's brother testified that Brown became paranoid after his release from the hospital in January 2013.  He stared out the windows of his house and locked himself in the bathroom for hours every day.  This behavior continued for two to four months

after Brown was released from the hospital, but not through November or December 2013. On several occasions, continuing through 2013, Brown was unable to remember things he had done recently.

Dr. Nancy Kaser-Boyd, a clinical and forensic psychologist with extensive experience in posttraumatic stress disorder (PTSD), testified for the defense. She said PTSD is caused by an incident where a person feels they are going to die or senses a threat to their physical integrity. Brown had PTSD, exacerbated by substance abuse. She testified that Brown's behavior during the bank robbery was consistent with a dissociative state, which she described as "a split in consciousness where the regular state of thinking and being is split off and there is an altered state." It can occur with PTSD. Symptoms of a dissociative state can include loss of awareness of one's surroundings and blackouts with absence of memory of one's actions. But she agreed that Brown remembered his conduct during the robbery. She testified an individual in a dissociative state may exhibit "robotic" behavior of something they commonly do. But she agreed it would not include "walking into a bank and writing down a note and handing it to a teller" unless the person has "done it before." She said Brown was not hallucinating or delusional during the robbery.

In rebuttal, the prosecution called Dr. James Tahmisian, a clinical psychologist with 45 years' experience. He concluded that Brown was not in a dissociative state during the bank robbery but demonstrated situational awareness and engaged in goal-directed behavior.

*Original sentence*

In the original sentencing on July 2, 2018, the trial court

denied Brown's *Romero* motion to dismiss the strikes. The court sentenced Brown to a determinate term of 27 years, consisting of the upper term of three years for the violation of section 69, doubled for the prior strikes (§ 667, subd. (e)(2)(C)), one year for use of a deadly weapon (§ 12022, subd. (b)(1)), and five years for each of the four serious felony priors (§ 667, subd. (a)(1)). He was sentenced to consecutive indeterminate "Three Strikes" terms of 25 years to life for each of the robberies, for a total of 50 years to life, to follow the determinate term. (§§ 211, 667, subd. (e)(2)(A)(ii)) & (2)(B).) The court imposed a concurrent 180-day county jail sentence for the misdemeanor (§ 185, count 4).

*First appeal*

In the first appeal, we reversed counts 2 and 4 based on an involuntary confession. We conditionally reversed counts 1 and 3 and directed the trial court to conduct a mental health diversion eligibility hearing (§§ 1001.35, 1001.36). We ordered: "If the court determines that Brown is ineligible for diversion, or he does not successfully complete diversion: (1) he may be retried for counts 2 and 4 and the deadly weapon enhancement, (2) the conviction for counts 1 and 3 and the admission of the prior serious felony convictions and prior strikes shall be reinstated, (3) he shall be resentenced, and (4) the court shall exercise its discretion whether to strike the serious felony priors." (*People v. Brown, supra*, 2020 WL 6439959.) Our Supreme Court denied Brown's petition for review (S265909).

*Resentencing*

On remand in April 2022, the trial court denied mental health diversion. In May 2022, the court granted the People's motion to dismiss counts 2 and 4 and the accompanying deadly weapon enhancement and five-year priors, declined to dismiss

6

the five-year enhancements to count 1 for the two serious felony priors (§ 667, subd. (a)(1)), and declined to reconsider denial of the *Romero* motion.

The court sentenced Brown to 25 years to life for count 1 with two prior strikes. (§§ 211, 667, subd. (e)(2)(A)(ii).) The court imposed the high term of three years for count 3, doubled it for the strikes, and added enhancements for the two five-year serious felony priors, for a total determinate sentence of 16 years. (§§ 69, 667, subds. (a)(1), (e)(2)(C).)

*Current appeal*

Brown appealed the resentencing. Our original decision in this appeal, filed October 26, 2023, remanded to correct technical errors in the abstracts of judgment but affirmed the judgment in all other respects. Our Supreme Court granted review (S282850), then transferred the matter back to the Court of Appeal with directions to vacate our decision and to reconsider it in light of *People v. Salazar* (2023) 15 Cal.5th 416 and *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*). Having reconsidered the matter and reviewing the parties' supplemental briefs, we reverse the sentence for count 3 and remand for full resentencing.

DISCUSSION

*Mental health diversion*

On June 27, 2018, the Governor signed Assembly Bill No. 1810 (2017–2018 Reg. Sess.), providing for diversion of individuals with mental disorders. (§§ 1001.35, 1001.36, enacted by Stats. 2018, ch. 34, § 24.) In the first appeal, we remanded for the trial court to determine whether to grant mental health diversion. (*People v. Frahs* (2020) 9 Cal.5th 618, 640–641; see *People v. Braden* (2023) 14 Cal.5th 791, 802–803.) Brown

7

contends the trial court abused its discretion when it denied diversion.  We disagree.

### 1. Senate Bill No. 1223

After the trial court's ruling on remand, section 1001.36 was amended to expand the availability of mental health diversion.  (Sen. Bill No. 1223 (2021–2022 Reg. Sess.); Stats. 2022, ch. 735, § 1, eff. Jan. 1, 2023.)  The Attorney General correctly concedes the amendment applies to the current appeal.[3]

The amended statute made two significant changes regarding *eligibility* for diversion: (1) the defendant "has been diagnosed with a mental disorder" (replacing the previous requirement that "[t]he court is satisfied that the defendant suffers from a mental disorder"), and (2) establishing a rebuttable presumption that the "mental disorder was a significant factor in the commission of the charged offense."  (§ 1001.36, subd. (b)(1) & (2).)

If the defendant is eligible for diversion, the court "may, in its discretion" grant diversion if "the court determines that the defendant is *suitable*."  (§ 1001.36, subd. (a), italics added.)  Suitability requires that four criteria are met.  There is no dispute that Brown met three of the suitability criteria because he was diagnosed with a mental disorder, would consent to diversion, and agreed to comply with treatment.  (§ 1001.36, subds. (b)(1), (c)(2) & (3).)  But as discussed below, the court found that Brown did not meet the fourth suitability requirement

---

[3] Section 1001.36 was subsequently repealed and replaced by a similar new section 1001.36, operative July 1, 2024.  (Stats. 2023, ch. 687, § 1.2.)  It was later amended effective January 1, 2025.  (Stats. 2024, ch. 647, § 1.5.)  These changes are not relevant to this appeal.

8

because he "pose[d] an unreasonable risk of danger to public safety . . . if treated in the community."  (§ 1001.36, subd. (c)(4).)

"A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence [citation]."  (*People v. Moine* (2021) 62 Cal.App.5th 440, 449.) "This standard involves abundant deference to the trial court's rulings."  (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.) The record here supports the trial court's exercise of discretion to deny diversion.

### 2. Significant factor in commission

Regarding eligibility, the mental health diversion statute originally required the court to be "satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense."  (§ 1001.36, former subd. (b)(1)(B).)  Senate Bill No. 1223 (2021–2022 Reg. Sess.) created a presumption that the court "shall find" the disorder was a significant factor "unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense."  (§ 1001.36, subd. (b)(2).)

The trial court here found no "nexus between the criminal conduct of Mr. Brown and any alleged delusional behavior or symptomology."

We need not remand for reconsideration of the "significant factor" requirement for eligibility pursuant to Senate Bill No. 1223 (2021–2022 Reg. Sess.).  Under either version of the statute, the trial court would have found Brown was not *suitable* for diversion because it found he posed an unreasonable risk of

9

danger to public safety if treated in the community.  (See *People v. Jefferson* (2019) 38 Cal.App.5th 399, 407 [declining to remand for retroactive application of original version of § 1001.36 where record " 'clearly indicates' the trial court would not have found defendant eligible for diversion"].)

### 3. *Danger to public safety*

One criterion for diversion suitability is: "The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community."  Among the factors the court may consider are "the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate."  (§§ 1001.36, subd. (c)(4), 1170.18, subd. (b).) " '[U]nreasonable risk of danger to public safety' " means an unreasonable risk the defendant will commit an offense listed in section 667, subdivision (e)(2)(C)(iv), commonly referred to as " 'super strikes.' "  (§ 1170.18, subd. (c); *People v. Hall* (2016) 247 Cal.App.4th 1255, 1262, fn. 6.)  Evaluation of the risk to public safety is "a quintessential discretionary function."  (*People v. Moine, supra*, 62 Cal.App.5th at p. 448.)

The trial court found that based on Brown's "prior criminal history spanning many years," he had the potential to commit a future "super strike."  Brown's record included two 1998 strike convictions for armed robbery, a 1993 robbery with great bodily injury, assault by force likely to produce great bodily injury, battery on a peace officer, two convictions for fighting in public, and escape from jail.  The probation report also included a risk of violence and recidivism assessment tool that found Brown had a high score for history of violence, a high risk for violent

recidivism, and a high score of noncompliance when placed in the community.

This case is unlike *People v. Moine, supra*, 62 Cal.App.5th 440, upon which Brown relies.  There the trial court abused its discretion when it denied mental health diversion.  *Moine* relied on the unrefuted opinions of two psychiatrists that the defendant posed a low risk of future assault.  (*Id.* at p. 451.)  Here, Dr. Kaser-Boyd stated, without explanation, "If Mr. Brown participates in the treatment he needs . . . he does not present a risk of committing the violent acts identified in the law."  (Italics omitted.)  But the violence and recidivism tool in the probation report was to the contrary.  *Moine* distinguished *People v. Hall, supra*, 247 Cal.App.4th at pages 1265–1266, which involved a defendant, like Brown, who had a lengthy history of crimes, including two strike convictions for robbery.  (*Moine*, at p. 451.)

Nor is this case like *People v. Williams* (2021) 63 Cal.App.5th 990, upon which Brown relies.  Psychiatrists found Williams's risk of violence was low.  He had no prior felony record, and he had never assaulted anyone.  (*Id.* at pp. 997–998, 1002–1003.)  In contrast, Brown had an extensive criminal history, including armed robberies and assault.

The prosecutor told the trial court the current robbery was a super strike because it carried a Three Strikes life sentence. This argument is contrary to *People v. Hernandez* (2017) 10 Cal.App.5th 192, 202, but Brown did not refute it in the trial court.  The record does not show that the court accepted this claim, and in any event, prior commission of a super strike is not required to find an unreasonable risk of danger to public safety. (*People v. Hall, supra*, 247 Cal.App.4th at p. 1266.)

11

Moreover, there was no assurance Brown would remain medication-compliant in the community and receive other services and treatment necessary to avoid substance abuse and criminal conduct. Brown had a prescription for Norco when he committed the offenses, but his practice was to sell the pills and use the money to buy illegal drugs. As we concluded in *People v. Pacheco* (2022) 75 Cal.App.5th 207, 213–214, the trial court was not required to accept the defendant's assurances that he would comply with treatment if released to the community. As in *Pacheco*, the trial court here acted within its discretion in denying mental health diversion based on its assessment of unreasonable risk of danger if Brown was treated in the community.

Brown notes that the court impliedly found that he did not pose an unreasonable risk of danger to public safety when it reduced a 1994 narcotics possession conviction to a misdemeanor pursuant to section 1170.18. But that order occurred before Brown's current convictions for bank robbery and resisting an officer by violence.

A finding of future dangerousness may also be based on the circumstances of the current offenses. (*People v. Bunas* (2022) 79 Cal.App.5th 840, 861–862.) Brown robbed a bank, threatened the teller with death if she did not cooperate, and fought with and injured a police officer.

The circumstances of the current offenses and Brown's criminal history support the trial court's exercise of discretion to conclude that Brown "pose[d] an unreasonable risk of danger to public safety" and that diversion would not meet the statutory goal of "protecting public safety." (§§ 1001.36, subd. (c)(4), 1001.35, subd. (a).) No abuse of discretion has been shown.

Because mental health diversion is not a sentencing choice but is a pretrial program in lieu of adjudication and sentencing, the trial court need not reconsider it when it resentences Brown pursuant to our current remand. (See *People v. Frahs*, *supra*, 9 Cal.5th at p. 626.)

*Upper term*

Brown contends the trial court erred when it imposed the high term for count 3 (§ 69) because there was not a stipulation or jury determination of the truth of aggravating factors. We agree and remand for further proceedings.

*1. Sentencing hearings*

At the original sentencing, the court relied on four circumstances in aggravation listed in the probation report in imposing the upper term: Brown's violent conduct indicated a serious danger to society, his prior convictions were numerous or of increasing seriousness, he served a prior prison term, and his prior performance on probation or parole was unsatisfactory. (Cal. Rules of Court,[4] rule 4.421(b)(1), (2), (3), (5).) The court did not adopt the lone factor in mitigation listed in the probation report: Brown "voluntarily acknowledged wrongdoing before arrest." (Rule 4.423(b)(8).) The court imposed the high term of three years for count 3, doubled for the prior strikes. (§ 667, subd. (e)(2)(C).)

On remand following the first appeal, the People asked the trial court "to take judicial notice of the aggravating factors that are listed out" in the probation report, including: "prior convictions increasing in severity and significance," "the defendant has engaged in violent conduct that indicates a serious danger to society," and "the defendant . . . has served a prior

_____

[4] All rule references are to the California Rules of Court.

13

prison term."  The People did not mention unsatisfactory performance on probation or parole.  But the court took judicial notice of "the aggravating factors."  It is unclear whether the court relied on Brown's alleged unsatisfactory performance on probation or parole.  The court reimposed the high term of three years for count 3, doubled for the strikes.

*2. Requirement of jury determination*

Section 1170, subdivision (b) was amended effective January 1, 2022, by Senate Bill No. 567 (2021–2022 Reg. Sess.), which incorporated amendments in Assembly Bill Nos. 124 (2021–2022 Reg. Sess.) and 1540 (2021–2022 Reg. Sess.).  (Stats. 2021, ch. 731, § 1.3.)  The Attorney General correctly concedes the amendment applies to Brown's 2022 resentencing.  (*Lynch*, *supra*, 16 Cal.5th at p. 742.)

The amended statute allows imposition of the high term only if justified by circumstances in aggravation "and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§ 1170, subd. (b)(2).)  As provided in section 1170, subdivision (b), equivalent means of proof for a jury determination beyond a reasonable doubt include the stipulation of the parties or a judge's determination at a court trial if jury is waived.

"[T]he court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  (§ 1170, subd. (b)(3).)  But in *Erlinger v. United States* (2024) 602 U.S. 821, 837, the high court held a judge may "undertake the job of finding the fact of a prior conviction—and that job alone."  *Erlinger* held that for purposes of increased punishment under a

14

federal sentencing statute, the defendant is entitled to a jury determination whether prior violent felonies were committed on "separate occasions."  (*Id.* at p. 835.)

Pursuant to *Erlinger v. United States*, *supra*, 602 U.S. 821, a jury determination was required to establish at least three of the aggravating factors the court relied on when imposing the upper term: Brown "engaged in violent conduct that indicates a serious danger to society" (rule 4.421(b)(1); *Lynch, supra*, 16 Cal.5th at p. 776), his prior convictions were of increasing seriousness (rule 4.421(b)(2); *People v. Wiley* (2025) 17 Cal.5th 1069, 1082–1083), and his prior performance on probation or parole was unsatisfactory (rule 4.421(b)(5); *Wiley*, at pp. 1082–1083).

*Lynch* declined to resolve whether a jury determination was required for the other aggravating factor, i.e., that the defendant "has served a prior term in prison."  (Rule 4.421(b)(3); *Lynch, supra*, 16 Cal.5th at pp. 744–745, 774–775 & fn. 20.) *People v. Wiley, supra*, 17 Cal.5th 1069 does not discuss this issue.  Even if *Erlinger* permitted the trial court to find that Brown served a prior prison term, remand is required because "the facts supporting *every* aggravating circumstance upon which the trial court relies to 'justify' imposition of the upper term must be properly proven as the statute requires."  (*Lynch, supra*, 16 Cal.5th at p. 757.)

### 3. Harmless error

Imposing the high term without a jury determination of aggravating factors warrants reversal unless the error is harmless beyond a reasonable doubt.  (*Lynch, supra*, 16 Cal.5th at p. 754.)  We conclude the error here is not harmless.

The sentence "must be reversed and remanded unless the

15

reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true *all of the aggravating facts* upon which the court relied to conclude the upper term was justified." (*Lynch*, *supra*, 16 Cal.5th at p. 743, italics added.) "In making this determination, we may ' "examine[] what the jury *necessarily* did find and ask[] whether it would be impossible, on the evidence, for the jury to find *that* without *also* finding the missing fact as well." [Citation.] In other words, if " '[n]o reasonable jury' " would have found in favor of the defendant on the missing fact, given the jury's actual verdict and the state of the evidence, the error may be found harmless beyond a reasonable doubt.' [Citations.] We may also find the omission harmless if we can conclude beyond a reasonable doubt 'that the omitted [fact] was uncontested and supported by overwhelming evidence.' " (*Id.* at p. 775.)

Applying this standard, we conclude beyond a reasonable doubt that a jury would have found that Brown served a prior prison term. (Rule 4.421(b)(3).) He admitted at trial he had been in prison for robbery. The jury also would have found his prior convictions were "of increasing seriousness." (Rule 4.421(b)(2).) He was convicted in two misdemeanor cases of fighting in public, followed by a felony drug possession conviction, a misdemeanor battery of a peace officer, followed by an armed first degree robbery, another armed robbery, and a felony escape. But we cannot conclude the jury would have found true the other two aggravating factors relied upon by the court to impose the upper term.

The jury found Brown guilty of second degree robbery of a bank (count 1, § 211) and forcibly resisting a police officer (count 3, § 69). A jury certainly *could* find that this constituted "violent

conduct that indicates a serious danger to society." (Rule 4.421(b)(1).) But we cannot conclude beyond a reasonable doubt that it *would* have done so. In the bank robbery, Brown did not have a weapon and did not use actual force. And Brown's resistance to the officer resulted in moderate injuries— lacerations and abrasions. The Attorney General also concedes that mental illness played a role in the offenses.

Brown contested whether he was dangerous. He argued that the prior strike convictions were over 20 years old and he was less likely to reoffend due to his age. He argued he had a "very genuine motivation to avoid returning to prison, and instead to receive treatment." A report from Dr. Kaser-Boyd concluded Brown desired treatment and "will not pose an unreasonable risk of danger to public safety . . . if treated in the community." In our view, the record does not establish that it would have been "impossible" for a reasonable jury to find Brown did *not* pose a *serious* danger. (*Lynch*, *supra*, 16 Cal.5th at p. 775.)

We cannot speculate as to what the jury would have found because determining "violent conduct" and "a serious danger to society" are based on " ' "subjective standard[s]" ' " that are " ' "difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." ' " (*Lynch*, *supra*, 16 Cal.5th at p. 775.) On this record, we cannot conclude, beyond a reasonable doubt, that a jury would have found Brown "engaged in violent conduct that indicates a serious danger to society."

The same is true regarding unsatisfactory performance on probation or parole. Brown's probation report showed violations

17

of probation of an unknown nature in the 1990s. But at the resentencing, Brown argued that he "remained perfectly law abiding" when he was released on parole in 2008, was employed full-time, tested negative for drugs, and did not commit any offenses until after he was shot in November 2013. On this record, we cannot conclude beyond a reasonable doubt that a jury would necessarily find Brown's performance on probation or parole was unsatisfactory.

Because we conclude imposition of the high term without a jury determination was not harmless beyond a reasonable doubt, we remand for resentencing on count 3.

*Low term based on trauma*

Brown also contends the sentence for count 3 must be remanded to determine whether the low term is required based on psychological or physical trauma. (§ 1170, subd. (b)(6)(A).) We agree.

Senate Bill No. 567 (2021–2022 Reg. Sess.), which was in effect at the resentencing, provides that if the defendant "has experienced psychological, physical, or childhood trauma," and it was "a contributing factor in the commission of the offense," the court must impose the low term "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6)(A).)

The record establishes that Brown "suffered a qualifying trauma, which would appear to meet the statute's threshold requirement for triggering the lower term presumption." (*People v. Salazar*, *supra*, 15 Cal.5th at p. 419.) This conclusion is supported by the defense evidence at trial and expert opinions regarding PTSD and other effects of the 2013 attack on Brown.

18

Brown relied on PTSD in his application for mental health diversion.  But at the resentencing neither the parties nor the trial court mentioned the low term presumption.  Brown seeks it now, and the Attorney General does not contend Brown forfeited the issue.  Accordingly, our remand to determine the term for count 3 shall include a determination whether Brown is entitled to the low term based on section 1170, subdivision (b)(6)(A).  We express no view as to how the court should resolve that question.

*Serious felony priors*

Brown contends the trial court erred when it failed to dismiss the five-year enhancements for the prior serious felony convictions.  We need not resolve this issue in light of our disposition remanding the case for resentencing.

Brown admitted two prior serious felony priors based on 1998 robbery convictions.  (§ 667, subd. (a)(1).)  In the first appeal, we remanded for the trial court to exercise its newly authorized discretion to determine whether to strike the priors.  (§§ 667, 1385, as amended by Sen. Bill No. 1393 (2017–2018 Reg. Sess.); Stats. 2018, ch. 1013, §§ 1–2.)

Before Brown's resentencing, section 1385 was further amended by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1).  The amended statute applies to all sentencings after January 1, 2022.  (§ 1385, subd. (c)(7).)  It provides that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so."  (§ 1385, subd. (c)(1).)  It further provides, "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances

19

weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (§ 1385, subd. (c)(2).)[5]

But there is no "rebuttable presumption" that the court *must* dismiss an enhancement or impose a lesser one "that can only be overcome by a finding that dismissal endangers public safety."  (*People v. Walker* (2024) 16 Cal.5th 1024, 1033.)  Rather, "if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement."  (*Id.* at p. 1036.)  The court must ultimately "determine whether dismissal is in furtherance of justice."  (*Ibid.*)

On resentencing, the court declined to dismiss the enhancements, stating, "[B]ased on my reading of the case, and the allegations of the case I think it is appropriate for the court to impose the nickel prior, the enhancement."[6]

Brown contends the enhancements should be dismissed based on three mitigating circumstances listed in section 1385, subdivision (c)(2): "[m]ultiple enhancements are alleged in a single case," "[t]he current offense is connected to mental illness,"

___

[5] Section 1385 was amended again by Assembly Bill No. 200 (2021–2022 Reg. Sess.) (Stats. 2022, ch. 58, § 15), and Assembly Bill No. 1754 (2023–2024 Reg. Sess.) (Stats. 2023, ch. 131, § 160).  These  amendments are not pertinent to the issues in this appeal.

[6] The court actually imposed two five-year priors.

and "[t]he enhancement is based on a prior conviction that is over five years old." (*Id.*, subd. (c)(2)(B), (D) & (H).)

We need not determine whether the trial court abused its discretion when it declined to strike the enhancements because it must exercise its discretion again on remand. "[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) Under the " 'full resentencing rule,' " "the resentencing court has jurisdiction to modify *every* aspect of the sentence." (*Ibid.*) Because we remand for resentencing on count 3, the court shall also exercise its discretion whether to strike the five-year enhancements for the prior serious felony convictions. We express no view as to how the court should resolve any issue on resentencing.

Romero <em>motion</em>

Brown contends the trial court improperly failed to reconsider his motion to dismiss his prior strikes on remand. (*Romero, supra*, 13 Cal.4th 497.) We agree but conclude the error is moot because the trial court must exercise its discretion again on remand.

In the initial sentencing in 2018, the trial court denied the *Romero* motion. The court noted that the 1998 prior strikes were "almost identical" to the new offenses, i.e., robberies "putting people at significant risk, both mentally and physically." Although the strikes were committed approximately 16 years earlier, Brown spent 11 years in prison until he was paroled in 2008 and then committed the current offenses in 2013.

On resentencing, Brown asked the trial court to reconsider

21

the *Romero* motion and "at least strike one of the strikes." Brown argued the prior strikes were 23 years old, no violence was intended in the bank robbery, and he suffered from PTSD. The prosecutor argued "[t]he only two issues in front of the [c]ourt" were diversion and the five-year priors. The court apparently accepted the prosecutor's argument it had no jurisdiction to dismiss a strike pursuant to *Romero* and imposed a Three Strikes sentence of 25 years to life for count 1.

The Attorney General concedes the trial court had jurisdiction to reconsider the *Romero* motion on the previous remand. Because we now remand for resentencing on count 3, and pursuant to the full resentencing rule, the court shall exercise its discretion whether to dismiss the prior strikes pursuant to *Romero*, *supra*, 13 Cal.4th 497. (*People v. Buycks*, *supra*, 5 Cal.5th at p. 893.)

### *Errors in abstracts of judgment*

Brown notes several errors in the determinate and indeterminate abstracts of judgment:

  *1. Abstract of judgment—determinate*

  Date of hearing: date of resentencing

  Judge: judge for resentencing

  Section 15: execution of sentencing imposed at resentencing per decision on appeal (box b rather than a)

  Section 16: credit for time served pursuant to sections 2933 and 4019 as of date of resentencing

  *2. Abstract of judgment—indeterminate*

  Date of hearing: date of resentencing

  Judge: judge for resentencing

  Section 3: two (not four) five-year priors (if imposed)

  Section 5: delete sentence of life with the possibility

of parole (retain section 6b, 25 years to life on count 1)

> Section 9a: restitution fine is stayed

> Section 9c: $41 theft fine is stayed

> Section 12: indeterminate count [not counts] is consecutive with determinate sentence

> Section 14: execution of sentencing imposed at resentencing per decision on appeal (box b rather than a)

> Section 15: use date of resentencing.

We do not accept the Attorney General's concession that if the court imposes the two five-year enhancements for prior serious felony convictions (§ 667, subd. (a)(1)), they must be stricken from the determinate sentence. They do not enhance the conviction for section 69 because it is not a serious felony. (§§ 667, subd. (a)(1) & (4), 1192.7, subd. (c).) Instead, they enhance the sentence for robbery, which is a serious felony. (§ 1192.7, subd. (c)(19).) " 'Once the minimum indeterminate term is calculated, "other enhancements or punishment provisions," such as section 667(a) enhancements, are added as a separate determinate term to the indeterminate term,' " to be served consecutively. (*People v. Williams* (2004) 34 Cal.4th 397, 403; *People v. Flores* (2021) 63 Cal.App.5th 368, 379.) The clerk properly added the two five-year enhancements to the term for count 1.

We do not order corrections to the abstracts because following resentencing pursuant to the current remand, the clerk must prepare new abstracts of judgment which will presumably avoid the previous errors.

DISPOSITION

Our opinion filed October 26, 2023, is vacated. We reverse the portion of the sentence imposing the high term for count 3.

The matter is remanded for resentencing.  In all other respects, the judgment is affirmed.  The trial court shall prepare amended abstracts of judgment and send a certified copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


GILBERT, P. J.


CODY, J.

Thomas R. Adams II, Judge

Superior Court County of Santa Barbara

_____

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.